## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GERTRUDE DARLENE ECKSTEIN, an individual, and Gertrude Darlene Eckstein's son and Guardian ad Litem, ANDY ECKSTEIN,<br><br>        **Plaintiff,**<br><br>v.<br><br>GENWORTH LIFE INSURANCE COMPANY, a foreign insurance corporation,<br><br>        **Defendant.** | <br><br>Case No: CIV-23-588-PRW<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW the Plaintiff, Gertrude Darlene Eckstein, an individual and Gertrude Darlene Eckstein's son and proposed Guardian ad Litem, Andy Eckstein, and for her cause of action against the Defendant, Genworth Life Insurance Company, a foreign insurance corporation, alleges and states as follows:

1. Gertrude Darlene Eckstein ("Mrs. Eckstein") is a resident and citizen of Stillwater, Payne County, State of Oklahoma.

2. Plaintiff will seek to have Mrs. Eckstein's son, Andy Eckstein, formally appointed to act as Gertrude Darlene Eckstein's Guardian ad Litem for her for purposes of this litigation.

3. Defendant, Genworth Life Insurance Company, ("Genworth") is a foreign corporation with its principal place of business in Richmond, Virginia, and is authorized to transact business within the State of Oklahoma and may be served with process

through its designated service agent, identified as Glen Mulready, Oklahoma Insurance Commissioner, 400 NE 50th Street, Oklahoma City, OK 73105.

4.      Genworth sold an individual long term care insurance policy to Mrs. Eckstein effective June 14, 2000. This insurance policy (Policy No: UCG4006266) was in force at all times material hereto.

5.      This insurance policy was sold, issued and delivered, and at all times renewed in the State of Oklahoma providing coverage for this resident of the State of Oklahoma.  The law governing the interpretation and enforcement of the contract at issue in this action is Oklahoma law.

6.      This insurance policy is and was issued as a Qualified Long Term Care Insurance Contract as defined by the Internal Revenue Code §7702Bb.  Such Qualified Long Term Care Insurance Contracts are required to comply with Oklahoma's Long Term Care Insurance Act and Oklahoma's Long Term Care Insurance Regulations and applicable federal law.

## INSURANCE CLAIM

7.      Oklahoma's Supreme Court has stated that a party who seeks to recover for an insured loss *has but a single cause of action*, although its claim may be advanced concurrently on *ex contractu* and *ex delicto* theories (Emphasis in original).  *Taylor v. State Farm Fire and Cas. Co.*, 1999 OK 44, 981 P.2d 1253 (Okla. 1999).  At the present time, Plaintiff advances her claim to recover for her insured long term care claim concurrently on both contract and bad faith theories.

2

8.      Mrs. Eckstein became Chronically Ill and started receiving Qualified Long Term Care services at Legacy Village of Stillwater beginning February 3, 2022.

9.      On December 20, 2022, Genworth advised Mrs. Eckstein, for the first time, that they were denying her insurance claim, claiming that she did not satisfy the policy's benefit eligibility requirements. Genworth's denial was expressly made based solely upon a determination that Mrs. Eckstein did not meet the policy's eligibility criteria.

10.     Genworth's letter states that Mrs. Eckstein does not require Substantial Supervision due to Severe Cognitive Impairment as defined in the policy. The information Genworth had received at that time verified that she did meet these policy definitions. The letter specifically states that Genworth had not received a written Current Eligibility Certification from a Licensed Health Care Practitioner that Mrs. Eckstein met one of the care requirements. In fact, Genworth had such written certification of these care requirements from her attending physician, Dr. Knapik.

11.     In fact, Mrs. Eckstein did remain and continues to remain Chronically Ill, does meet the policy's definitions, and will for the rest of her life. Mrs. Eckstein timely and properly made claim to Genworth for these policy benefits and has otherwise met all conditions precedent for payment of the proper policy benefits, but Genworth has consistently refused payment.

12.     Genworth improperly and unreasonably delayed the handling and processing of this claim in not denying it until December 20, 2022. Genworth improperly investigated this claim by not providing the assessment personnel, the proper policy criteria to assess Mrs. Eckstein's cognitive impairment and requirements for supervision

such that they can properly investigate and assess these facts.   Correspondingly, Genworth has developed claim guidelines and training that intentionally mischaracterizes these policy requirements in order to intentionally misevaluate and promote denial of eligibility.   Further, upon certifications from the attending physician, Genworth intentionally refuses to make inquiry specific to the policy provisions or to investigate and develop any information from the attending physician to prevent the development of any information that might support eligibility for benefits.  To the extent that there were any remaining questions pertaining to the policy requirements and Mrs. Eckstein's eligibility, Genworth does not investigate or present the actual policy conditions to attending physicians or other providers in an intentional effort not to fully investigate and to resist any information that might support or certify the insured's eligibility.  The above actions in this case were pursuant to established business practices intentionally implemented to promote improper denial of benefits and the denial of Mrs. Eckstein's claim in this case was in accord with such routine organizational practices.

13.   In its handling of Mrs. Eckstein's insurance claim, and as a matter of routine practice in the handling of similar Long Term Care claims, Genworth unreasonably, improperly, and inadequately investigated Mrs. Eckstein's claim and improperly evaluated her claim for payment of the policy benefits.  Genworth knew that this Chronically Ill individual suffered from chronic cognitive impairment, in the form of diagnosed cortical dementia without behavioral disturbance, senile dementia of the Alzheimer's type, and a cognitive illness that by definition was chronic and would be expected to only worsen throughout her lifetime.

4

14.    Genworth, as a matter of standard claims practice in the handling of these Long Term Care claims, did not contact the physicians to investigate or inquire at all regarding any policy specific questions or determinations because they knew that the physicians would only further certify Mrs. Eckstein's eligibility for the coverage. Instead, they intentionally refused to further investigate Mrs. Eckstein's eligibility for benefits in order to aid their own position for denial and to enable them to later state that they did not receive adequate other information.  Genworth intentionally, by design, conducted an inadequate investigation in order to avoid the facts that would further substantiate coverage.  Genworth intentionally, by design, denied coverage stating only that Mrs. Eckstein was not eligible and concealing any specifics or details as to how or why, in order to thwart the insured's ability to dispute the claim.

15.    Genworth, in their handling of Mrs. Eckstein's claim, and like claims, has instituted guidelines for the handling of these Long Term Care claims and interpretations that it applies to the policy's terms that Genworth knows are not supported by the applicable laws and by the requirements for such a Qualified Long Term Care Insurance Contracts.  This claims practice involves applying restrictions that are not contained in the policy at all, manipulation of wording that is provided in the policy, and knowingly misconstruing and misapplying provisions of the policy contract in a manner different than what Genworth knows the law requires relative to such contracts.

16.    Genworth knows that a person that is eligible for the policy benefits because they meet the benefit trigger for cognitive impairment, because they have a cognitive or Alzheimer's related diagnosis, will continue to need continual substantial

supervision, but has developed various ploys to attempt to refute the same when they know benefits continue to be payable because the insured continues to be Chronically Ill. Genworth trains its claims personnel to treat the word "continual" as if that word were "continuous" in order to require substantial supervision more throughout the day. Genworth utilizes the grading scale wording for some of the cognitive tests to feign confusion that the stated words in the test scale somehow reflect what is meant by severe cognitive impairment in the Qualified Long Term Care Insurance Contract. However, Genworth knows such a contention is improper for the reason that the benefit trigger under these insurance contracts is specifically defined and set forth in the policy and in the law pertinent to such policy provisions. Genworth intentionally fails to investigate and properly evaluate the claim by asking the precise questions dictated by the specific benefit triggers mandated for these contracts because they don't want to develop any information that would refute their attempted denials. Genworth believes that their own failure to reasonably investigate the claim can be used to insulate their exposure by claiming that they just never received sufficient information/confirmation of Chronic Illness. Meanwhile, they always utilize the same, general denial language, so that the insured cannot competently challenge the denial.

17.     On information and belief, Genworth has had discovered and been confronted for these same abuses involved in Mrs. Eckstein's denials on a number of occasions, but intentionally proceeds in the improper handling and denial of these Long Term Care insurance claims for the reason that it is very profitable. With many families, the afflicted insured is too Chronically Ill to challenge the insurance company denial and

their family too busy caring for the Chronically Ill individual and taking care of their own matters to more fully pursue the improper denials. Even when the insured does have family to appropriately and repeatedly challenge the impropriety of the denial, Genworth still refuses coverage knowing that most of those claims would not be pursued through litigation. For the few claims that do wind up with an attorney, most lawyers do not understand these coverages and accept these ploys. On information and belief, for even those long term care insurance claims denials that do proceed to court, Genworth settles those claims on an average for less than what they owed in the first place. Genworth, through scorched earth litigation practices, can continue to refuse claims that it knew it owed, while pushing the insureds through extended litigation and the summary judgment motion to determine if its exposures would be limited by the Court to what they should have paid in the first place. Summary Judgment Orders from Courts not properly advised are the reason Genworth persists in these improper denials. Genworth continues in the same improper tactics for denial that it has been confronted with in the past for the simple reason that it knows that the profits that it will make in these improper denials far exceeds their exposure in the few claims that might be successfully litigated against them beyond the summary judgment determination. This is the reason and the motive for such a conspicuously improper denial in claiming that Mrs. Eckstein was not eligible.

18.     As a direct result of Genworth's breach of contract and breach of the implied covenant of good faith and fair dealing, Mrs. Eckstein suffered the loss of the policy's long term care benefits, the associated waiver of premium benefit, and loss of the peace of mind and security for which she and her husband began paying premiums for

this coverage many years ago, emotional distress, frustration and duress as a result of being unable to achieve any reasonable, fair consideration of her obvious eligibility for these policy benefits.

19.     Genworth's acts and omissions in the denial of this long term insurance claim and their callous handling and practices for this long term insurance claim are with reckless disregard for the rights of others and/or are done intentionally and with malice and/or its conduct is potentially life-threatening to humans, therefore, Plaintiff is entitled to recover punitive damages. The jury should consider the two punitive damage questions prescribed by Oklahoma Statute in order to determine whether it is appropriate for them to deliberate on the possibility and the amount of a punitive award.

20.     Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff prays for judgment against the Defendant, Genworth Life Insurance Company in an amount in excess of the jurisdictional amount set out in 28 U.S.C.A. §1332, with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.

MANSELL & ENGEL

By: _____

Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Zachary K. Housel, OBA #32802
204 North Robinson Avenue, 21st Floor
Oklahoma City, OK 73102-7201
T: (405) 232-4100 ** F: (405) 232-4140
E-mail:  mengel@meclaw.net

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

**ATTORNEYS FOR PLAINTIFF**